STATE, on the relation of CHARLES BIENVENU, v. S. WROTNOWSKI, Secretary of State.— ALFRED SHAW, Sheriff, Intervenor.

An exception that there was a misjoinder of parties and relators ; that the petition shows no interest in, or cause of action on the part of either relator; and that the petition does not set forth and state such a case as would authorize the court to issue a *mandamus*, was properly overruled by the court *a quo*.

*By the Court.*—*Mandamus* is necessarily a summary proceeding, and it is very questionable whether, in such a case, the intervention of third persons can be legally maintained.

Where the issuing of this writ would not be consonant with right and justice, or would serve no just or useful purpose, it should not be granted.

The words of a law are generally to be understood in their most known and usual signification, without attending to the strictness of grammatical construction so much as to their general popular use.

The Secretary of State cannot go behind commissions officially presented to him for authentication. Neither will this court go behind a commission to inquire into the evidence on which it was issued.

It is the duty of the Governor to fill vacancies. In elective offices he cannot remove an incumbent; but the appointment to fill a vacancy does not operate a removal of the previous incumbent, because no removal can so be made; the office is vacant, or it is not vacant; if it is vacant, it is properly filled by the last appointment; if it is not vacant, the first incumbent cannot be disturbed.

APPEAL from the Sixth District Court of New Orleans, *Duplantier*, J. *Geo. S. Lacey* and *A. P. Field* for relator. *B. L. Lynch, Attorney General,* for the State. *L. Madison Day* for intervenor. *E. Hiestand* for Wrotnowski.

*L. Madison Day for Shaw, intervenor.*—Any one having an interest may intervene. C. P. 390.

The court cannot refuse the intervention. C. P. 394.

In Tapping on *Mandamus*, (3 Law Library, 6th series, 350,) [302,] it is said: " The court will, in general, allow all those against whom the rule *nisi* has been granted, or upon whom it has been served, or have had notice, or who are legally interested in the question, to show cause."

Mr. Shaw's right of intervention is, therefore, undoubted.

2. Writ of *mandamus* is addressed to a party directing him to perform some certain act belonging to the place, duty or quality with which he is clothed. C. P. 829.

Writ never issues to officer charged with a public duty, to do any act where law vests him with a discretion. 2 L. R. 395-6; Tapping on Mandamus, 12, 13.

Secretary of state is only required to authenticate official, that is, legal acts.

There is a discretion in the court to grant or refuse the *mandamus*, according to the justice of the case, as it shall be made to appear by the facts in the return to the alternative writ, even in the case of a mere ministerial act. *Waldron et al.* v. *Lee*, 5 Pick. 329.

And if upon the return it appears that the act which party required to be performed is illegal, or not required by law, the court will refuse the *mandamus. Ib.*

"A mandamus may sometimes lie against a ministerial officer to do some ministerial act connected with the liabilities of the government, yet it must be where the government itself is liable, and the officer himself has improperly refused to act." 11 How. 289, 272.

"It must even then be in a case of clear, and not doubtful right." *Kendall* v. *United States*, 12 Pet. 525; *Life and Fire Insurance Company* v. *Wilson's Heirs*, 8 Pet. 291, *Ib*.

"A *mandamus* will not lie against a secretary, unless the laws require him to do what he is asked in the petition to be made to do." 11 How. 289.

Now, what law requires the secretary of state to authenticate the illegal and unconstitutional act of removing the sheriff, and the appointment of a new one?

"Again, a *mandamus*, as before intimated," says the Supreme Court of the United States, is only to compel the performance of some ministerial, as well as legal duty. *Kendall* v. *United States*, 12 Pet. 524; *Rex* v. *Water Works Company*, 1 Nev. & Perry, 439, 11 How. 290.

If, then, the authentication by the secretary of state were a mere ministerial act, where is the law or legal duty requiring him to authenticate an unconstitutional act, as we will show the appointment of the relator to be?

The jurisdiction of the court to command the execution of the particular act or duty, the subject of the writ *must be clear*, otherwise it will not interfere." Tapp. on Mandamus, 11.

"The application for this writ," says Mr. Justice Clayton (3 Smedes & Mar. R. 712), "is addrersed to the sound legal discretion of the court, and it will not be awarded to enforce the performance of an act which is *contrary to law*. Cowen, 502; *Waldron* v. *Lee*, 5 Pick. 329."

The same rule is laid down in Tapping on Mandamus, 16.

"The applicant must not only show that he is legally and equitably entitled to some right properly the subject of the writ, but must show that it is legally demandable from the person to whom such writ must be directed, otherwise the court will refuse to interfere." Tapping on Mandamus, 29.

Tested by these principles and authorities, the *mandamus* must be refused in this case; and this especially, as Shaw has intervened.

For the appointment of the relator to the office of sheriff is unconstitutional, illegal and void.

Under the constitution of 1864, Art. 84, the governor can only appoint a sheriff in case of a vacancy "subsequent to an election" for a sheriff.

And by Art. 150, Mr. Shaw and all others in office at the time of the adoption of the constitution were continued in office until "the organization of the government under this constitution, and the entering into office of the new officers to be appointed under said government," etc.

Now, under Art. 84, a sheriff is to be elected.

How, then, could Mr. Shaw be removed and Mr. B. be appointed, without a violation of the constitution?

No power can be derived from Arts. 54 and 55 of the constitution.

Neither of these articles give any power to appoint a sheriff.

The power to make such an appointment is derived solely from Art. 84, and which can only be done in the solitary case of a vacancy, subsequent to an election. See 20 Barb. 307.

There has been no election for sheriff, and, as we have said, Mr. Shaw, under Art. 150 of the constitution, was continued in office until his office was filled by an election.

STATE
WROTNOWSKI.
v.

For it is not in the power of the governor to remove Mr. Shaw, and by his own act, create a vacancy. 9 An. 237.   See 2 Scam. R. 74. 20 Barb. 307.

The executive can only exercise such power as is clearly granted by the constitution. 2 Scam. R. 79.

"Where a claim of power is advanced by the executive, the question is whether it has been granted to the executive, and if the grant cannot be shown he has no title to the exercise of the power." *Ibid* 81–2.

Has any grant of power been attempted to be shown in this case for the removal and appointment of a sheriff?   None whatever.   The application, then, for a *mandamus* must fail.

For, as is well said in the case in 2 Scam. R. 82: "As the right of the governor to remove * * * must be granted by the constitution, or it does not exist, it therefore devolves upon those who advocate the claim of the executive power, to show the grant upon which it is founded, to point out the clause and section of the constitution from which it is derived."

This principle is conclusive against relator's pretensions, as no grant of power or authority for his appointment has or can be shown.

Such being the case, the secretary of state will not be ordered to contribute to an illegal act. 3 Smedes & Mar. 712.

For the secretary's duties are prescribed by law, and he is bound to conform to law and not to the will of the executive. 2 Scam. R. 93–4; Brees Rep. 68.

The governor, then, having no power to appoint the relator, the petition must be dismissed.

And, in conclusion, allow us to say that it has been expressly decided that the secretary of state will not be compelled by *mandamus* to authenticate an act of the governor which is unconstitutional. Brees (Ill.) R. 68.

ILSLEY, J.   On the 14th May, 1865, the Sixth District Court of New Orleans granted its mandate, ordering Stanislas Wrotnowski, secretary of state, to affix his official signature and the seal of his office to the commission signed and issued by James Madison Wells, Governor of the State of Louisiana, under date of 1st May, 1865; or, in default thereof, that the said Wrotnowski show cause to the contrary, on Monday, the 11th May, 1865.

On the day last mentioned, Wrotnowski excepted to the petition of the relators, on the following grounds :

1. That there was a misjoinder of parties, relators, in said case.

2. That the petition shows no interest in, or cause of action, on the part of either relator.

3. That the petition does not set forth and state such a case as would authorize the court to issue a *mandamus*.

This exception was properly overruled by the lower court.

On the 18th of the same month, Wrotnowski filed his answer to the relator's petition, and therein averred for reason why a peremptory *mandamus* should not be issued against him, as prayed for by the relators, that the commission referred to in the said petition was utterly null and void, and of no force, effect or validity whatever, because attempted to be issued by the governor without any warrant of law for so doing, and in direct violation of the constitution and laws of the State; that he can not

be compelled to lend the sanction of his name as secretary of state, by countersigning such illegal commision and affixing the great seal of state thereto; that the office of sheriff of the parish of Orleans has been held since March 16, 1864, and is now held, under a commission issued in pursuance of the laws and constitution of the State of Louisiana, by Alfred Shaw, which commission does not expire until the next regular election for sheriff, and that the governor is without any authority to supercede the said Shaw, as sheriff aforesaid, by the appointment of the relator, and he prayed that the application of the relators for a peremptory *mandamus* be refused.

This answer contains all the reasons why Wrotnowski refused to authenticate, with his official signature and seal, the commission issued in favor of the relator, C. Bienvenu.

Previous to the filing of this answer, Alfred Shaw, by permission of the court, intervened in the proceeding, setting forth substantially the same grounds as those subsequently urged by the secretary of state, and praying for the same relief; and further averred, in order to vest this court with jurisdiction, that his interest in the controversy exceeded the sum of three hundred dollars; which fact, by a supplemental answer, was also averred by Wrotnowski.

The relators moved to dismiss the petition of intervention, because Shaw showed not the least right to intervene in the case pending, and this motion was reserved and overruled in the final judgment rendered by the court below.

*Mandamus* is, necessarily, a summary proceeding; and it is very questionable whether, in such a case, the interventions of third persons can be legally entertained, obstructing, as they must, therein the avenues of justice; particularly, too, in a case involving, like this one, grave and important questions of great public interest.

The late court, in *Chambliss* v. *Atchinson*, 2 A. 490, in a summary proceeding, pronounced an intervention a derogation of common right, unauthorized by law. In Tapping on Mandamus, referred to by defendants (3 Law Lib. 6th series, 350, 302), it is said: "The court will, in general, allow all those against whom the rule *nisi* has been granted, or upon whom it has been served, or have had notice, or are legally interested in the question, to show cause." The term, in general, presumes exceptional cases excluded from the rule, and one like this would fall within the exception, if such a rule had any binding effect on the courts of this State, which is controlled by its own rules of practice, by which interventions are permitted in ordinary suits, but not in summary proceedings.

It is not, however, necessary to pass now on that point, because it is immaterial who figure as parties herein, as there is but one issue on which the question must be decided.

Divested of all extraneous, superfluous and irrelevant surroundings, what is the real question to be solved ? We apprehend it to be this : Is the secretary of state, under the constitution and laws of the State of Louisiana, a mere ministerial officer, as regards the authorization by him of official acts; or is he, under the constitution and laws, vested with a discretionary and supervisory power, which enables him, before executing the functions by law imposed on him in this particular, to judge for

himself whether such official acts as need his ministry are constitutional or unconstitutional, legal or illegal, and to affix or withhold from such acts, at his option, according to his discretion, his official signature and the impress of the great seal of the State ?

If the first of these theories, which is the one contended for by the relators, be the correct one, then the remedy prayed for by them should be accorded. But, if the issuing of the writ would not be consonant with right and justice, or would serve no just or useful purpose, the mandate should not be granted.

We have been greatly assisted in the investigation of the very important and interesting questions submitted for our decision by the elaborate researches and the able arguments of counsel representing the different parties litigant.

The first question, the one that lies at the foundation of this controversy, and which, in its order, should be first considered, is whether the secretary of state could legally go behind the commission issued by the governor, in due form, to Bienvenu, and examine into the facts upon which the executive action was predicated ?

To this end, we must examine our own laws, in preference to those of other States, to ascertain what are the duties that devolve by law on the secretary of state. He is a constitutional officer, as are the treasurer, the auditor and sheriffs; and he belongs to the executive branch of the government. See Art. 62, tit. 1, Constitution of Louisiana.

His duties are defined by law. Art. 62; § 1 Const. See acts of 1855, No. 273 and No. 281, which latter statute enacts that there shall be a public seal, for authenticating the acts of the government, and that the secretary of state shall be the keeper, and shall affix this public seal to *all* official acts, the laws alone excepted. See sections 1 and 2.

The law is imperative in its command. The secretary of state *shall* affix the public seal to *all* official acts.

It becomes, then, important that the word official should be clearly defined. Is it necessarily used in a sense synonymous with the word legal ? Is the ingredient of legality an essential concomitant in defining the word official ?

It is laid down, in Article 14 of the Civil Code, that the words of a law are generally to be understood in their most known and usual signification; without attending so much to the niceties of grammar, as to the general popular use of words.

Reference, then, must be had to the lexicographers for the general and popular use of the word *official.*

The best, most approved and popular English dictionaries extant are those of Worcester and of Webster, and these both concur in the signification and meaning of the word, in its English sense, regardless of the definitions of the same word in other languages. "Official," says these authors, means "*derived from the proper officer, or from the proper authority, made or communicated by virtue of authority.*"

News, though derived from official sources, may be untrue. If the authority is a competent one, all acts done by it are official acts. The issuing of a patent for land is an official act, and yet nothing may be conveyed by it, for want of title in the grantor.

The signing of a commission by the governor of the State is an official duty imposed on him by the constitution; it emanates from the executive authority, and is issued from the proper office. Art. 66 tit. 4 Const.

The governor is by the constitution vested with the exclusive power to make some, and, under certain contingences, other official appointments, and such appointments are official acts. Arts. 54 and 55, tit. 4 Const.

He must determine for himself from information communicated to *him,* when appointments become necessary; but he is under no legal obligation to communicate either to the secretary of state, or to any one else, upon what information he acts.

The secretary of state is not to suspend his action to enquire why and wherefore any appointment by the governor is made.

His duty is plain : he is not directed,. but ordered by law, to perform it. When commissions from the governor need authentication, he shall affix his official signature and the public seal of state, for these are official acts. Whatever improvidence or illegality there may be in the issuing of commissions, that concerns not him. His authenticating any official act can never compromit him; for he has no discretion to exercise regarding it.

It is the duty of the governor to fill vacancies. In elective offices he cannot remove an incumbent; but the appointment to fill a vacancy does not operate a removal of the previous incumbent, because no removal can so be made; the office is vacant, or it is not vacant; if it is vacant, it is properly filled by the last appointment ; if it is not vacant, the first incumbent cannot be disturbed. What injury, then, could by any possibility result to the first incumbent by the new appointment, if it were illegally made. It would be to him *damnum absque injuria.*

Were this right of supervision, which is almost equivalent to a veto power, in the secretary of state, as it is seriously contended it is, it would, indeed, produce startling consequences. The secretary of state could *paralyze* at will constitutional appointments made by the executive. He, and not the governor, would control appointments or nullify them; and this, indeed, according to the doctrine of the intervenor's counsel, is what the constitution contemplated ! By way of illustration, one of his counsel depicts the evil which would flow from reposing too much power in the executive, who, if he were despotically inclined, might, if he were unchecked by the secretary of state, appoint a new set of judges to contest the seats on this bench of the present constitutional incumbents. Such an event, it is true, would not be beyond the reach of possibility; but what injury could result from such illegal executive action ? But, reverse this case, and suppose that the secretary of state, in the exercise of his pretended discretion, had refused to authenticate the commissions of the present incumbents, what legal means, without a supreme court, would exist of ascertaining, in the last resort, the legality of such a refusal ? and how could this very case now before us have been finally disposed of ?

Another example, by way of illustration, suggested by the relator's counsel, to show the impolicy of any such controlling power in the hands of the secretary of state, is not altogether inappropriate :

A criminal, on the eve of execution, is reprieved by the executive ; but

STATE            the official act of reprieve needs authentication at the hands of the secre--
 v.
WROTNOWSKI.  tary of state, who, in the exercise of his discretion, withholds it.

This discretionary power, so fatally exercised, might be eventually ig-
nored by the courts ; but, in the interval, the culprit is hung.

If illustrations like these, although presented by counsel in argument,
are out of place here, they may have and probably did present themselves
to the legislative mind, when the secretary of state was ordered to authen-
ticate *all* official acts.

The counsel for the defendants placed great reliance on a decision
rendered by the Supreme Court of Illinois, in the case of *The People on
the relation of Wm. L. D. Ewing* v. *Forquer,* reported in the 1st vol. of
Breese's Illinois Reports, p. 68.

An extract from that decision will suffice to show what was the point
therein at issue. It was on a motion for a *mandamus* on the relation of
Wm. D. Ewing, who took out a rule on the secretary of state, requiring
him to show cause why a *mandamus* should not be awarded against him,
requiring him to countersign and seal a commission appointing the
relator paymaster-general of the state.

The judge who delivered the opinion said : ''The office had been vacant
since 1821, and yet, I am not aware that any complaint had ever been
made. I therefore come to the conclusion that the lieutenant-governor,
admitting him fully clothed with all the functions of governor, had not
the constitutional power to fill the vacancy in the office of paymaster-
general. This conclusion would seem to settle the question whether the
*mandamus* ought to be awarded or not. But the relator's counsel con-
tended, in the argument, that whether the lieutenant-governor had the
constitutional right or not to make the appointment, still, the secretary
was compelled to countersign the commission and affix the seal.

Can this proposition be sustained ?

By the 4th section of the act, defining the duties of secretary of state,
it is enacted : ''That all commissions required by law to be issued by the
governor, shall be countersigned by the secretary of state.'' Had the
legislature intended to require the secretary to countersign every com-
mission that the governor should present to him, whether authorized by
the law or the constitution, its phraseology would have been that the
secretary should countersign every commission presented to him by the
governor. The secretary-is, however, *only* required to countersign those
commissions required to be issued by law. Must he then look into the
law to see if the commission is required by law ? Would he be required
to sign a commission for an office that does not exist ?

The secretary of state is a constitutional officer, as well as the governor,
and his duties are pointed out by law. I think he may refuse to sanction
an unconstitutional or illegal act. Should I, however, be wrong in this
opinion, still the court might well doubt the propriety of granting a
*mandamus.* If the lieutenant-governor had not the power to make the
appointment, what benefit would the relator derive from possessing the
commission; although duly signed and sealed, would it confer the office
on him ? I think not. But if any doubt rests on the subject, the court
ought not to grant the *mandamus.*''

W 'e are at a loss to perceive what analogy exists between this Illinois case and the one now before us.

In the former case, a legal discretion was vested in the secretary of state. He was to authenticate all commissions *required by law*; not *all* official acts, and this is, in effect, what constituted the discretion vested in that officer.

The language and phraseology, says the court, would, to divest him of discretion, have applied to *every* commission presented to him by the governor.

The statute of this state requires the secretary to authenticate *all* official acts; and commissions signed by the governor appointing sheriffs, are, to all intents and purposes, official acts; and, being embraced in the comprehensive term *all*, that word is equivalent to the word *every*, which was needed in the Illinois statutes to divest the secretary of 'state there of his discretion.

This court does not entertain any doubt whatever as to the practical construction of our statute, nor of the nature of the duty of the secretary of state to give it effect. He cannot go behind commissions officially presented to him for authentication.

There is a case in 12 An. p. 719: *The State on the relation of Vienne* v. *S. M. Hyams*, on an application for a *mandamus*, involving a contest between an old sheriff and a newly elected one, and the court expressed therein the unanimous opinion, that it could not go behind the commission to examine the proof upon which the governor acted in issuing the relator's commission, and to reverse his decision.

When two commissions duly authenticated for the same office are extant, and it becomes necessary to determine which of the two appointees is legally entitled to the office, that issue, presented in a proper manner and at the proper time, can be entertained by the courts; but the courts will not inquisitively seek to know upon what evidence the executive acted in the performance of a constitutional duty, at all events in advance of the consummation of an official act.

This is not a proceeding in which the right to the office of sheriff, as between the conflicting claimants, is directly involved. We do not deem that question properly before us, and we decide now nothing in regard to it.

It will be time enough to do this whenever such a case is presented for judicial investigation.

A great many authorities have been referred to by the defendants' counsel to show that no useful purpose could be attained by granting the *mandamus* to the relator; and this involves the second branch of the question which we propose to solve.

There is no legal means of ascertaining upon what information or evidence the governor acted in appointing Bienvenu to the office of sheriff.

Such an appointment might, in a certain contingency, have been legally made by the executive. If a vacancy occurred it was his duty to make the appointment.

Having made it, he is presumed, as a sworn officer, to have done his duty till the contrary is shown.

STATE
v.
WROTNOWSKI.

But, it is contended that the first incumbent occupies the office under a legal commission, and that, consequently, there is no vacancy.

But does this necessarily follow?

Suppose, for instance, that, when Bienvenu was appointed, the governor had in his possession Shaw's resignation, which, accepted by him officially, would certainly have created a vacancy; Shaw's commission would still be held by him, because there is no law requiring him to part with it, and he could still be performing the duties of the office under the legal requirement (see Act No. 289, 1855, ¿ 2), until his successor was inducted into office.

Evidence like this, therefore, does not suffice to destroy the presumption of legality which flows from the performance of an official act, done by the highest executive officer of the State. And, as held in 12 A. p. 79, the court would not go behind the commission to enquire into the evidence on which it was issued.

It is the unanimous opinion of this court that neither the secretary of state nor the intervenor has shown any valid and legal reasons why the former should not authenticate the commission issued by the governor in favor of Charles Bienvenu; and that a *mandamus* is the proper remedy to oblige him to perform his duty in this particular. See Code of Practice, 829 and 832. *Hammerick* v. *Hunter*, 14 A. 225. *Parker* v. *Robertson*, 14 A. 249. As a matter of public policy, a useful purpose may be subserved by the issuing of a *mandamus* in this case. It may happily be that the performance of the duty imposed on the secretary of state will not confer on the relator any legal right to the office of sheriff; but this is no reason why the secretary of state should attempt to exercise discretionary powers where the law confers none on him, but, on the contrary, imperatively orders him to do the act required of him.

The judgment of the lower court must be reversed.

It is therefore ordered, adjudged and decreed, that the judgment of the lower court in this case be annulled, avoided and reversed, and proceeding to give such judgment as should have been given by the court below, it is ordered, adjudged and decreed, that a writ of peremptory *mandamus* issue in the name of the State of Louisiana to Stanislas Wrotnowski, Secretary of State of Louisiana, directing him to affix his official signature and the public seal of the State to the commission signed and issued by James Madison Wells, Governor of the State of Louisiana, on the first day of May, in the year one thousand eight hundred and sixty-five, nominating and appointing Charles Bienvenu, Esq., sheriff in and for the parish of Orleans; and it is further ordered, that the defendant, Stanislas Wrotnowski, pay the costs in both courts.